# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**MICHAEL SZABO,**

      Plaintiff,

                **Case No. 06-C-1172**

  -vs-

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      Defendant.

# DECISION AND ORDER

  Michael Szabo ("Szabo") appeals the Social Security Commissioner's denial of an award of disability insurance benefits ("DIB") and supplemental security income ("SSI"). Szabo tore the anterior cruciate ligament and medial meniscus of his left knee in 2000, and the pain in his knee lingers. Tr. 535. At 5 feet 10 inches tall and 344 pounds, Szabo's body mass index is at the recognized level of "extreme" obesity. Tr. 559. Szabo also suffers from psoriatic arthritis, sleep apnea, and depression. Tr. 539, 543, 544. Despite these impairments, an administrative law judge (ALJ) found that Szabo is not disabled because he could still perform a range of sedentary work found in his local region. Tr. 26.

  The ALJ's finding was based on the testimony of a vocational expert ("VE"), whose function in a disability hearing is to determine which, if any, jobs the applicant can perform and how many of those jobs exist in the applicant's region. *See* 20 C.F.R. §§ 404.1566(b), 416.960(c)(1). When asked what sedentary work could be performed by a forty-year-old

person who has a high-school level of education and who can not stand for more than fifteen minutes, reach with his left hand more than occasionally, or be exposed to fumes or noxious gases, the VE replied that the state of Wisconsin offers 30,000 receptionist jobs, 12,500 bench-assembler jobs, 5,000-6,000 hand-packager jobs, 3,000-4,000 inspector jobs, and 1,000-2,000 surveillance-monitor jobs to such an individual. Tr. 580-81.

On appeal, Szabo argues that the VE's testimony is invalid because the ALJ did not accurately describe his functional limitations to the expert. Szabo raises three specific objections to the ALJ's description of his physical limitations: first, that the ALJ did not properly consider the effects of his psoriatic arthritis on his functional abilities; second, that the ALJ did not consider the effects of Szabo's obesity; and third, that the ALJ failed to properly weigh evidence of Szabo's depression. The ALJ's decisions and the Commissioner's final determination will be affirmed if they are supported by "substantial evidence." *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

First, Szabo testified that psoriatic arthritis makes it difficult for him to grasp things- especially with his left hand-and that the arthritis in his hand flares up several times per month, causing additional pain. Tr. 560-61. The ALJ therefore specified that Szabo's psoriatic arthritis precludes him from more than occasional reaching with his left hand, but placed no functional limitation on the basis of the flare-ups. Tr. 25, 580. The evidence presented at Szabo's hearing does not show that the flare-ups, as Szabo argues, make it impossible for him to perform any work on a regular basis. No physician opined that the arthritis precluded Szabo from working; to the contrary, Szabo's rheumatologist described

the arthritis as being under "good control" and "not very active." Tr. 249-52. Szabo's daily activities and work efforts also suggest that the arthritis was not disabling. 20 CFR § 416.929(a). Szabo testified that he is able to shop, cook, wash dishes, vacuum, and wash laundry. He also testified that he does lawn work, gardening, and housework. Tr. 567-68, 576-77. Finally, Szabo performed maintenance work at his apartment building for approximately fifteen hours per week. Tr. 555. This evidence provides substantial support for the ALJ's functional assessment of Szabo-that although his psoriatic arthritis limits his ability to reach and grasp things, it does not prevent him from working altogether.

Szabo's second contention-that the ALJ did not consider the effects of his obesity-likewise fails. Due in part to Szabo's obesity, the ALJ explicitly limited Szabo to sedentary work, and Szabo's own testimony suggests that his obesity problem is not disabling. Szabo testified only that his obesity is burdensome because he can not move around "at times . . . too well." Tr. 560. Even so, the ALJ's functional assessment of Szabo limited him to sedentary work that involves lifting less than ten pounds while being predominately seated. Tr. 23. The ALJ further limited Szabo's functional capacity by specifying that he can not stand for more than fifteen minutes. Tr. 23. Therefore, the ALJ's limitation is consistent with Szabo's testimony.

In addition, no treating physician placed functional limitations on Szabo that were as stringent as the ALJ's limitations. One physician observed that Szabo would have difficulty climbing machines, Tr. 144; another limited him to no more than four to six hours per day on his feet, Tr. 150. And a third physician noted that Szabo would be unable to do

"strenuous activities." Tr. 204. The evidence presented shows that Szabo's obesity problem combined with his other physical conditions limited him to sedentary work, and that limitation was stated for the VE's consideration. Tr. 580.

As for depression, the ALJ found that Szabo's depression was not a severe impairment. Szabo argues that the ALJ improperly weighed the evidence he presented in reaching that conclusion. The ALJ based his decision on the opinion of a state agency psychologist, rather than the opinion of a psychologist who treated Szabo on several occasions. Tr. 23, 459. The ALJ also found that Szabo's depression is "situational" in nature (implying the impairment is not severe), which is noted in one of Szabo's counseling records. Tr. 446. This evidence appears substantial, and in any event, the resolution of competing arguments based on the record is left to the ALJ. *See, e.g.*, *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006).

Finally, as an alternative ground for relief, Szabo argues that the VE's testimony is invalid because it conflicts with the *Dictionary of Occupational Titles* ("DOT"). The VE testified that Szabo could perform sedentary work as a receptionist, bench assembler, hand packager, inspector, or surveillance monitor. Tr. 580-81. Asked by the ALJ whether his testimony differed from information in the DOT, *see* SSR 00-4p, 2000 WL 1898704, the VE replied that it did not. Tr. 581. However, the DOT lists the jobs of hand packager and bench-assembly operator as occupations that require physical demand in excess of the requirements for sedentary work. Therefore, the VE's testimony *did* conflict with the DOT.

-4-

Under SSR 00-4p, an ALJ who takes testimony from a VE has the affirmative responsibility to ask the VE about any possible conflicts that exist between his or her testimony and the information provided in the DOT. *Prochaska*, 454 F.3d at 735-36. If the VE's testimony is inconsistent with information in the DOT, "the adjudicator must resolve this conflict before relying on the [vocational] evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict." SSR 00-4p.

Here, the ALJ fulfilled his duty under SSR 00-4p by asking the VE whether there was a conflict between the VE's testimony and the DOT. To the extent there is a conflict, at least with respect to two of the posited available jobs (hand packager and bench assembly), substantial evidence still supports the ALJ's conclusion that Szabo has the RFC to perform other work in the national economy. For example, the VE noted that 30,000 receptionist jobs are available for Szabo, and it is undisputed that there is no conflict between the VE testimony and the DOT in this regard. Therefore, a remand is unnecessary despite the conflict between the VE's testimony and the DOT.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. The Commissioner's decision is **AFFIRMED**; and

2. This matter is **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 7th day of November, 2007.

        **SO ORDERED,**

        **s/ Rudolph T. Randa**
        **HON. RUDOLPH T. RANDA**
        **Chief Judge**